**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Victor W. Weaver III

    v.                               Case No. 10-cv-340-SM

Michael J. Astrue, Commissioner,
Social Security Administration


**REPORT AND RECOMMENDATION**


Pursuant to 42 U.S.C. § 405(g), Victor Weaver moves to reverse the Commissioner's decision denying his application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382.  The Commissioner, in turn, moves for an order affirming his decision.  For the reasons that follow, I recommend that this matter be remanded to the Administrative Law Judge ("ALJ") for further proceedings consistent with this report and recommendation.


**Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB

decisions); see also 42 U.S.C. § 1383(c)(3) (establishing §

405(g) as the standard of review for SSI decisions).  However,

the court "must uphold a denial of social security . . .

benefits unless 'the [Commissioner] has committed a legal or

factual error in evaluating a particular claim.'"  Manso-Pizarro

v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting

Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Commissioner's

findings of fact be supported by substantial evidence, "[t]he

substantial evidence test applies not only to findings of basic

evidentiary facts, but also to inferences and conclusions drawn

from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916,

917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727,

730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more

than [a] mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a

conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st

Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir 1991) (citations omitted).  Moreover, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988).  Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## Background

The parties have submitted a Joint Statement of Material Facts, doc. no. 13.  That statement is part of the court's record and will be summarized here, rather than repeated in full.

In 1996, Weaver had surgery on his L4-L5 disc.  In 2004, after being involved in a motor-vehicle accident, Weaver was

diagnosed with a mild bulging disc at L5-S1 and a large hemangioma[1] involving the entire L2 vertebral body.

Subsequent medical assessments of Weaver's back condition include: (1) musculoskeletal back pain with a question of facet joint type pain; (2) no acute orthopedic abnormality; (3) lumbar whiplash related low back pain from either facet joints or intervertebral discs; (4) slightly increasing spinal canal stenosis at L4-L5 due to now bulging and small central herniated disc with quite a bit of posterior facet joint hypertrophy on the left side; (5) a new herniation at L4-L5; (6) persistent herniated disc at L4-L5 and L5-S1 with probable extruded fragment going into the left side at L4-L5; (7) a lot of tenderness over surgical incisions; (8) no abnormalities visible by CT scan; (9) tenderness in the musculature causing pain; (10) no appreciable movement in the L4 to S1 region of the lumbar spine and no breakage of hardware; (11) no structural abnormality that explained ongoing back pain; and (12) solidly fused disc spaces with screws in good position and good hardware connections.

_____

[1] Hemangioma is "[a] congenital anomaly, in which proliferation of blood vessels leads to a mass that resembles a neoplasm." Steadman's Medical Dictionary 795 (27th ed. 2000). Neoplasm is "[a]n abnormal tissue that grows by cellular proliferation more rapidly than normal and continues to grow after the stimuli that initiated the growth cease. Id. at 1189.

Weaver's medical records document that he has employed the following treatments for his back condition, including the pain it causes: (1) physical therapy; (2) home exercise; (3) epidural steroid injections; (4) lumbar facet-joint nerve blocks; (5) disc surgery (fusion and bone graft) on the L4-L5 and L5-S1 discs; (6) hardware injections; (7) weight loss; (8) stretching; (9) hot tubs; and (10) massages.  The medical records also document that Weaver has been prescribed the following medications for his back pain: Robaxin, Ultracet, Skelaxin, Medrol Dosepak, Vicodin, Celebrex, Lodine, Mobic, and Percocet. By March of 2007, Dr. Anthony Salerni determined that Weaver was at a medical endpoint with regard to treatment for his back problems.

At his hearing, Weaver testified at considerable length about the effects of his back pain, primarily in response to questions from the ALJ.  Among other things, Weaver testified that: (1) cold weather exacerbates his back pain and that, as a result, when the weather is really cold, he will sometimes stay indoors for a week at a time, Administrative Transcript (hereinafter "Tr.") 31-32; (2) he quit working as a truck driver because of his pain; Tr. 32; (3) too much sitting or standing increases his pain, Tr. 33; and (4) he spends two to four hours a day lying down, to relieve his pain, Tr. 36.  He also

testified that when he undertakes household chores such as
vacuuming the house, cooking a meal, cutting the grass, or snow
blowing, he can sometimes complete the job, but sometimes must
quit before finishing due to his back pain.  Tr. 38-39.

    After Weaver's hearing, the ALJ issued a decision that
includes the following relevant findings of fact and conclusions
of law.

> 3. The claimant has the following severe impairments:
> degenerative disc disease of the lumber spine, status
> post fusion; status post meniscus tear of the right
> knee and status post open reduction internal fixation
> of the right wrist with degenerative joint disease of
> the right wrist (20 CFR 404.1520(c) and 416.920(c)).
>
> . . . .
>
> 4. The claimant does not have an impairment or
> combination of impairments that meets or medically
> equals one of the listed impairments in 20 CFR Part
> 404, Subpart P, Appendix 1 (20 CFR 404.1520(d),
> 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> . . . .
>
> 5. After careful consideration of the entire record,
> the undersigned finds that the claimant has the
> residual functional capacity to perform sedentary work
> as defined in 20 CFR 404.1567(a) and 416.967(a) except
> allowing for the freedom to sit and stand at will.
> The claimant can sit up to one hour at a time.
> Standing should be limited to 30 minutes at one time.
> [The] claimant can walk occasionally, but at a slow
> pace.
>
> . . . .
>
> 10. Considering the claimant's age, education, work
> experience, and residual functional capacity, there

> are jobs that exist in significant numbers in the
> national economy that the claimant can perform (20 CFR
> 404.1569, 404.1569(a), 416.969, and 416.969(a)).

Tr. 13, 15, 16, 19.  Based on the testimony of a vocational

expert ("VE"), the ALJ determined that Weaver could work as an

addresser, check cashier, and data examination clerk.  Tr. 20.

The VE also testified, in response to a question from the ALJ,

that if Weaver had to recline or lie down for at least two hours

during an eight-hour workday, there would be no jobs for him in

the national economy.  Tr. 56.

### Discussion

According to Weaver, the ALJ's decision should be reversed,

and the case remanded, because the ALJ: (1) erred by finding his

subjective complaints of pain to be less than fully credible;

and (2) made a residual functional capacity ("RFC") assessment

that was not supported by substantial evidence in the record,

which resulted directly from her incorrect credibility

determination.

To be eligible for disability insurance benefits, a person

must: (1) be insured for such benefits; (2) not have reached

retirement age; (3) have filed an application; and (4) be under

a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  To be eligible

for supplemental security income, a person must be aged, blind,

or disabled, and must meet certain requirements pertaining to income and assets.  42 U.S.C. § 1382(a).  The only question in this case is whether Weaver was under a disability.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A) (setting out a similar definition of disability for determining eligibility for SSI benefits).  Moreover,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . .

42 U.S.C. § 423(d)(2)(A) (pertaining to DIB benefits); see also 42 U.S.C. § 1382c(a)(3)(B) (setting out a similar standard for determining eligibility for SSI benefits).

In order to determine whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI

benefits, an ALJ is required to employ a five-step process.  See

20 C.F.R. §§ 404.1520 (DIB) and 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in
> substantial gainful work activity, the application is
> denied; 2) if the [claimant] does not have, or has not
> had within the relevant time period, a severe
> impairment or combination of impairments, the
> application is denied; 3) if the impairment meets the
> conditions for one of the "listed" impairments in the
> Social Security regulations, then the application is
> granted; 4) if the [claimant's] "residual functional
> capacity" is such that he or she can still perform
> past relevant work, then the application is denied; 5)
> if the [claimant], given his or her residual
> functional capacity, education, work experience, and
> age, is unable to do any other work, the application
> is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920).

The claimant bears the burden of proving that he is

disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He

must do so by a preponderance of the evidence.  See Mandziej v.

Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v.

Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).  Finally,

> [i]n assessing a disability claim, the [Commissioner]
> considers objective and subjective factors, including:
> (1) objective medical facts; (2) plaintiff's
> subjective claims of pain and disability as supported
> by the testimony of the plaintiff or other witness;
> and (3) the plaintiff's educational background, age,
> and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797
F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690
F.2d 5, 6 (1st Cir. 1982)).

The dispositive issue in this case is whether the ALJ
properly considered the credibility of Weaver's statements about
the limiting effects of his back pain.  Weaver argues that the
ALJ committed reversible error by failing to evaluate his
subjective complaints about pain in accordance with: (1) Avery,
797 F.3d at 29-30 (setting out seven factors that should be
considered by a decision maker assessing a claimant's subjective
statements about symptoms); (2) 20 C.F.R. §§ 404.1529 and
416.929; and (3) Social Security Ruling ("SSR") 96-7p, which is
titled "Policy Interpretation Ruling Titles II and XVI:
Evaluation of Symptoms in Disability Claims: Assessing the
Credibility of an Individual's Statements."  The balance of
Weaver's argument consists of an item-by-item discussion of the
Avery factors, plus several others, including the ALJ's
rejection of a treating-physician medical opinion.  Weaver
asserts that the ALJ either ignored or failed to correctly
analyze each of the relevant considerations.  On that basis, he
contends that this case should be remanded for a proper RFC
assessment, i.e., one that is based on a proper credibility
determination.  In response, the Commissioner argues that: (1)

the ALJ did, in fact, find Weaver's statements about pain to be
partially credible; (2) the ALJ's credibility determination was
supported by substantial evidence; and (3) Weaver's argument for
reversal amounts to little more than an impermissible request
for the court to reweigh the evidence the ALJ evaluated in
reaching her credibility determination.  Then the Commissioner
offers something approaching a factor-by-factor counterpoint to
Weaver's analysis of the <u>Avery</u> factors.  Weaver has the better
argument.

According to SSR 96-7p, "an individual's statement(s) about
his or her symptoms is not in itself enough to establish the
existence of a physical or mental impairment or that the
individual is disabled."  1996 WL 374186, at *2.  "A symptom is
an individual's own description of his or her physical or mental
impairment(s)."  <u>Id.</u>  When "symptoms, such as pain, fatigue,
shortness of breath, weakness, or nervousness," <u>id.</u>, are
alleged, SSR 96-7p prescribes the following evaluation process:

> * First, the adjudicator must consider whether there
> is an underlying medically determinable physical or
> mental impairment(s) – i.e., an impairment(s) that can
> be shown by medically acceptable clinical and
> laboratory diagnostic techniques – that could
> reasonably be expected to produce the individual's
> pain or other symptoms. . . .  If there is no
> medically determinable physical or mental
> impairment(s), or if there is a medically determinable
> physical or mental impairment(s) but the impairment(s)
> could not reasonably be expected to produce the

11

individual's pain or other symptoms, the symptoms
cannot be found to affect the individual's ability to
do basic work activities.

* Second, once an underlying physical or mental
impairment(s) that could reasonably be expected to
produce the individual's pain or other symptoms has
been shown, the adjudicator must evaluate the
intensity, persistence, and limiting effects of the
individual's symptoms to determine the extent to which
the symptoms limit the individual's ability to do
basic work activities.  For this purpose, whenever the
individual's statements about the intensity,
persistence, or functionally limiting effects of pain
or other symptoms are not substantiated by objective
medical evidence, the adjudicator must make a finding
on the credibility of the individual's statements
based on a consideration of the entire case record.

Id.  In addition:

When additional information is needed to assess the
credibility of the individual's statements about
symptoms and their effects, the adjudicator must make
every reasonable effort to obtain available
information that could shed light on the credibility
of the individual's statements.  In recognition of the
fact that an individual's symptoms can sometimes
suggest a greater level of severity of impairment than
can be shown by the objective medical evidence alone,
20 CFR 404.1529(c) and 416.929(c) describe the kinds
of evidence, including the factors below, that the
adjudicator must consider in addition to the objective
medical evidence when assessing the credibility of an
individual's statements:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and
> intensity of the individual's pain or other
> symptoms;
>
> 3. Factors that precipitate and aggravate the
> symptoms;

4. The type, dosage, effectiveness, and side
effects of any medication the individual takes or
has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the
individual receives or has received for relief of
pain or other symptoms;

6. Any measures other than treatment the
individual uses or has used to relieve pain or
other symptoms (e.g., lying flat on his or her
back, standing for 15 to 20 minutes every hour,
or sleeping on a board); and

7. Any other factors concerning the individual's
functional limitations and restrictions due to
pain or other symptoms.

Id. at *3.  In this circuit, the seven considerations listed

above are commonly referred to as the Avery factors.

SSR 96-7p outlines a specific staged inquiry that consists

of the following questions, in the following order: (1) does the

claimant have an underlying impairment that could produce the

symptoms he or she claims?; (2) if so, are the claimant's

statements about his or her symptoms substantiated by objective

medical evidence?; and (3) if not, are the claimant's statements

about those symptoms credible?  See Baker v. Astrue, Civ. No.

08-11812-RGS, 2010 WL 3191452, at *8 (D. Mass. Aug. 11, 2010)

("If after evaluating the objective findings, the ALJ determines

that the claimant's reports of symptoms are significantly

greater than what could be reasonably anticipated from the

objective evidence, the ALJ must then consider other relevant

information."); <u>Callie v. Comm'r of Soc. Sec.</u>, Civ. No. 09-1305,
2010 WL 1424725, at *3) (D.P.R. Apr. 6, 2010) (explaining that
"before weigh[ing] the credibility of a claimant's statements
about pain . . . [the] ALJ must first find a lack of support in
the objective medical evidence for the allegations of pain").

Finally, an ALJ's "determination or decision must contain
<u>specific reasons</u> for the finding on credibility, supported by
the evidence in the case record, and must be sufficiently
specific to make clear to the individual and to any subsequent
reviewers the weight the adjudicator gave to the individual's
statements and the reasons for that weight."  1996 WL 374186, at
*2 (emphasis added).  In other words, "[i]t is not sufficient
for the adjudicator to make a single, conclusory statement that
'the individual's allegations have been considered' or that 'the
allegations are (or are not) credible.'"  <u>Id.</u>

As a starting point for the following analysis, it is
necessary to identify the statement(s) at issue.  Happily, the
record permits that to be accomplished with some precision.  At
the hearing, Weaver testified that he has to lie down for two to
four hours each day because of his back pain.  Based on that
statement, the ALJ asked the VE about the number of jobs that
would be available to a person who needed to recline for at
least two hours each day.  The VE said that there would be none.

Thus, the focus of the following analysis is the correctness of the ALJ's finding that Weaver's statement about needing to recline for at least two hours a day to relieve his back pain was not credible.  If underpinned by a positive credibility finding, that statement would support a determination that Weaver is disabled, given the testimony of the VE.

For his part, the Commissioner says that the ALJ considered Weaver's testimony about needing to recline for at least two hours a day, and criticizes Weaver for failing to "explain why the ALJ's express consideration of this evidence is inadequate." Comm'r's Mem. of Law, at 16.  But, neither the ALJ nor the Commissioner identifies any evidence in the record that supports a conclusion that Weaver's statement about needing to lie down is not credible.  Moreover, careful reading of the ALJ's decision shows that she reported, but did not discuss, evaluate, analyze, or otherwise consider Weaver's statement about needing to lie down.  And, Weaver does not claim that the ALJ's "consideration" of his statement erroneously weighed the relevant factors; he asserts, correctly, that the decision gives no indication that the ALJ evaluated his statement at all.  That said, the court turns to the ALJ's decision.

The ALJ's assessment of Weaver's statements about the limiting effects imposed by his back pain is inadequate.  She

began her discussion of Weaver's RFC by setting out the legal

standard described in SSR 96-7p.  Next, she reported Weaver's

statements about the effects of his pain, including his

statement that "he must lie down for two to four hours each day

to relieve his pain."  Tr. 16.  Then she wrote:

> After careful consideration of the evidence, the
> undersigned finds that the claimant's medically
> determinable impairments could reasonably be expected
> to cause the alleged symptoms; however, the claimant's
> statements concerning the intensity, persistence and
> limiting effects of these symptoms are not credible to
> the extent they are inconsistent with the above
> residual functional capacity assessment.

Tr. 16.  While the ALJ clearly said that she did not credit

Weaver's statements about the limitations imposed by his back

pain, she did not identify any specific reasons for that

determination.  That is, there is no sentence anywhere in her

decision that says, in effect, "I find the claimant's statements

about pain to be less than credible because . . . ."

Instead, after stating her conclusion that Weaver's

statements were not fully credible, the ALJ devoted the next two

pages of her decision to discussing "the medical evidence of

record."  Tr. 17.  She concluded that discussion: "In summary,

the undersigned finds that the objective medical evidence of

record simply fails to establish an underlying medical basis

which would reasonably lead one to believe that the claimant is

16

suffering such pain that he is incapable of working."  Tr. 18
(emphasis added).

The analytical import of the ALJ's statement about medical
support for Weaver's claims about the limiting effects of his
back pain is difficult to discern.  Because the ALJ's statement
comes at the conclusion of an analysis that follows her
credibility finding, it could be construed as an explanation of
that finding.  But, because the ALJ's statement echoes the
language in SSR 96-7p that establishes the circumstances under
which an ALJ must make a credibility finding in the first
instance, her statement could be construed as explaining why the
ALJ made a credibility finding at all, notwithstanding the
statement's placement after the credibility finding rather than
before it.  Either way, the ALJ's statement provides
insufficient support for her credibility finding.

If the ALJ gave her appraisal of the objective medical
evidence to explain why she went on to make a credibility
finding, it would be circular to use that same appraisal as
justification for the negative credibility finding.  As a
logical matter, such reasoning completely forecloses the
possibility of a positive credibility finding.  On the other
hand, if the ALJ gave her appraisal of the objective medical
evidence as the complete explanation for her credibility

finding, and the decision can reasonably be construed that way, it is insufficient.  See Guziewicz v. Astrue, No. 10-cv-310-SM, 2011 WL 128957, at *6 (Jan. 14, 2011) ("If, indeed, the ALJ used the lack of objective medical evidence as his basis for finding Guziewicz to be not entirely credible, rather than treating such a finding as compelling him to conduct a credibility assessment, that constitutes legal error on the ALJ's part.").  Credibility findings must be "based on a consideration of the entire case record," 1996 WL 374186, at *2 (emphasis added), which includes the "medical signs and laboratory findings," id., along with the information encompassed by the Avery factors.

The ALJ's handling of the Avery factors is also problematic.  "Detailed written discussion of the Avery factors is desirable."  Lalime v. Astrue, No. 08-cv-196-PB, 2009 WL 995575, at *9 (D.N.H. Apr. 14, 2009) (citing Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987)). There is no detailed discussion of the Avery factors in the ALJ's decision.  But, an ALJ is not "obligated to slavishly discuss each of the factors listed in SSR 96-7p."  Ingle v. Astrue, No. 10-cv-103-SM, 5070766, at *8 (D.N.H. Nov. 8, 2010) (citing Crocker v. Astrue, No. 07-220-P-S, 2008 WL 2775980, at *4 (D. Me. June 30, 2008)).  Here, however, the ALJ's RFC assessment, which includes her negative credibility finding,

contains no actual discussion of or analysis based on any of the
Avery factors.  At one point, the ALJ reported, but did not
analyze or discuss, some of Weaver's statements about the
limiting effects of his pain.  And, in the discussion of the
objective medical evidence, the ALJ mentioned one of the nine
different medications Weaver has taken for his back pain and a
few of the measures he has used to address his pain.  But those
passing references are not part of any discussion that assesses
the credibility of Weaver's statements about the limiting
effects of his pain.

     To be fair, the ALJ did mention Weaver's activities of
daily living, the first of the Avery factors.  But she did so in
context of her step-two determination that Weaver's alleged
depression was not a severe impairment because it did not meet
the "paragraph B" criteria described in section 12.00C of the
listings for mental impairments.  The Commissioner argues that
"[t]here is no reason to assume that somewhere between her Step
Two and RFC discussions, the ALJ forgot Plaintiff's reports of
the extent of his daily activities."  Comm'r's Mem. of Law, at
10.  But neither the Commissioner nor the ALJ has explained how
a finding that Weaver was not too depressed to help with
household chores, drive, shop for groceries, play with his
children, and attend to personal needs sheds any light on the

credibility of Weaver's statement that back pain forced him to lie down for several hours each day.  In sum, the ALJ's handling of the Avery factors in her written decision simply does not make the grade.

A negative credibility finding in a decision that does not properly address the Avery factors may still be affirmed, however, because "an ALJ complies with Avery if [she] examines the relevant factors at the administrative hearing."  Lalime, 2009 WL 995575, at *9 (citing Graham v. Barnhart, No. 02-CV-243-PB, 2006 WL 1236837, at *8 (D.N.H. May 9, 2006); Braley v. Barnhart, No. 04-176-B-W, 2005 WL 1353371, at *8 (D. Me. June 7, 2005)).  Arguably, the ALJ in this case did make a sufficient inquiry into the Avery factors at Weaver's hearing to excuse the lack of discussion of those factors in her decision.

But, even so, the ALJ's credibility finding must be reversed because her decision simply does not explain, in any way, why she found Weaver's statement that he was forced to recline for two hours each day not to be credible.  That is in contrast with several other cases in which courts have affirmed negative credibility findings in cases where ALJs did not slavishly discuss the Avery factors, or relied on their oral examinations of claimants to meet the Avery requirement.  For example, in Vining v. Astrue, the district court rejected the

claimant's argument that the ALJ made a flawed credibility

finding where the ALJ stated, in his or her decision:

> Overall, the objective medical findings, a minimal
> course of treatment, the effectiveness of medications
> when used correctly, and the lack of any medical
> opinion concurrent with and supported by treatment
> notes do not support the claimant's . . . allegations
> [of disability].  In addition, the claimant has a wide
> range of activities of daily living which further
> diminish her credibility.

720 F. Supp. 2d 126, 139 (D. Me. 2010); see also Crocker, 2008

WL 2775980, at *5 (ALJ stated, in his or her decision: "[T]he

physical and emotional demands of the [plaintiff's] activities

of daily living contradict the nature and degree of impairment

he alleges, and undermine his credibility."); Graham, 2006 WL

1236837, at *8 ("In keeping with SSR No. 96-7p, ALJ Klingbiel's

RFC assessment gave a specific reason for his determination that

Graham's testimony was not entirely credible: he found that

Graham's alleged incapacity for even sedentary work was

inconsistent with her daily activities during the insured

period.").

The ALJ's decision in this case contains no explanation of

the sort reported in Vining, Crocker, or Graham.  Because the

ALJ did not "give specific reasons for the weight given to

[Weaver's] statements," 1996 WL 374186, at *4, or gave a reason

that was insufficient, i.e., the lack of objective medical

evidence in support of Weaver's statements, this case must be remanded for a proper consideration of Weaver's statements about his symptoms, and a proper RFC assessment.

Because this case is being remanded, the court need not say more.  But, because both sides have engaged on the issue of the ALJ's rejection of Dr. Peter Doane's treating-source medical opinion, albeit in the context of a credibility analysis, the court turns briefly to that issue.  In her opinion, the ALJ wrote:

> [T]he undersigned has considered the opinion of Dr. Doane, the claimant's family practitioner, at Exhibit 17F.  Although Dr. Doane states that the claimant cannot ambulate more than 100 feet without using a cane and cannot stand and/or walk for more than one hour each in an eight-hour workday, this opinion conflicts with the other objective evidence of record including reports from the claimant's surgeon, Dr. Salerni (Exhibits 1F and 9F) which indicate improvement following surgery and with reports from a physical therapist who observed the claimant to ambulate into and out of his office without an assistive device (Exhibit 5F.).

Tr. 18.

Dr. Doane gave his opinion on December 31, 2009.  Exhibit 1F consists of a collection of office notes and other records from Weaver's back surgeon dating from 2006 and 2007.  Those records do indicate some improvement after Weaver's surgery, but also document substantial complaints of pain and Dr. Salerni's opinion, dated March 8, 2007, that Weaver was "disabled from his

22

pain." Tr. 196. Exhibit 9F consists of more records from Dr.
Salerni from 2007 which describe the technical success of
Weaver's spinal surgery, but also convey Dr. Salerni's opinion
that Weaver was unable to work, or to "tolerate "any significant
activity at all." Tr. 419. Exhibit 5F is a June 22, 2007,
report from a physical therapist who observed that Weaver "used
no assistive devices at any point in [his] examination," Tr.
390, and also concluded that Weaver was "capable at the present
time of only occasional, slow paced walking," Tr. 380. Given
that the most recent of the foregoing evidence predates Dr.
Doane's opinion by more than two years, it is difficult to see a
conflict between Dr. Doane's opinion and the isolated positive
statements that may be gleaned from the reports the ALJ cites.
For that reason, and given the corroboration of Dr. Doane's
opinion that runs through those medical records, it is not
readily apparent that the evidence the ALJ adduces in support of
her rejection of Dr. Doane's opinion qualifies as more than a
mere scintilla. But, in the final analysis, an assessment of
the weight that should be given to Dr. Doane's opinion is a
matter for the ALJ on remand.

## Conclusion

For the reasons given, I recommend that: (1) the Commissioner's motion for an order affirming his decision, doc. no. 12, be denied; and (2) Weaver's motion to reverse the decision of the commissioner, doc. no. 10, be granted to the extent that the case is remanded to the ALJ for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).

Any objection to this Report and Recommendation must be filed within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See Unauth. Pract. of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

Dated:  May 25, 2011

cc:  Raymond J. Kelly, Esq.
     Robert J. Rabuck, Esq.